## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA RUPNOW, PETER SZOSTAK, and all others similarly situated,<br><br>           Plaintiffs,<br><br>    v.<br><br>E*TRADE SECURITIES, LLC,<br><br>           Defendant. | Civil Action No. 1:19-cv-10942-DLC |

## <u>BRIEF IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT</u>

# **TABLE OF CONTENTS**

I.   INTRODUCTION........................................................................................................1

II.  BACKGROUND........................................................................................................5

III. THE APPROVED NOTICE PLAN WAS SUCCESSFUL IN REACHING CLASS
     MEMBERS AND SATISFIED RULE 23 AND DUE PROCESS.........................6

   A.  The Approved Notice Plan was Successfully Administered .................................6

   B.  To Date, Plaintiffs Have Not Received Any Opt-Outs, Coupled with the Lack of Any
      Known Objections, Favoring Final Approval .....................................................8

IV. THE SETTLEMENT AGREEMENT SHOULD BE APPROVED AS FAIR,
     REASONABLE, AND ADEQUATE.......................................................................9

   A.  The Standards for Final Approval ......................................................................9

      1.   Factual Overview of Settlement Terms ......................................................11

   B.  The Proposed Settlement Is Procedurally Fair ..................................................12

      1.   Rule 23(e)(2)(A) – Plaintiffs Adequately Represented the Class................12

      2.   Rule 23(e)(2)(A) – Lead Counsel Adequately Represented the Class .........13

      3.   Rule 23(e)(2)(B) - The Settlement Was Reached After Arm's-Length
         Negotiations with the Assistance of an Experienced Mediator....................15

      4.   Rule 23(e)(2)(C): The Relief For the Settlement Class is Substantial. ........17

   C.  Rule 23(e)(2)(C): The Relief For the Settlement Class is Substantial................18

   D.  Rule 23(e)(2)(C)(ii): The Effectiveness of The Proposed Method of Distributing Relief is
      Adequate .........................................................................................................20

   E.  Rule 23(e)(2)(C)(iii): The Terms and Timing of the Proposed Award of Attorneys' Fees
      and Costs are Fair and Reasonable. ...................................................................22

   F.  Rule 23(e)(2)(C)(iv) – The Supplemental Agreement Has No Bearing

BRIEF IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

*Rupnow et. al. v. E\*TRADE Securities, LLC*, Case No. 1:19-cv-10942-DLC

on Final Approval. ........................................................................................................23

G.  Rule 23(e)(2)(D): The Settlement Treats Tier 1 and Tier 2 Settlement Class Members
    Equitably Relative to Each Other. .......................................................................23

H.  The Notice Campaign Satisfied the Requirements of Rule 23 and Due Process ...............24

I.  The Overall Reaction of the Class to Date Favors Approval .............................................26

V.  CONCLUSION ....................................................................................................26

BRIEF IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

*Rupnow et. al. v. E\*TRADE Securities, LLC*, Case No. 1:19-cv-10942-DLC

# <u>TABLE OF AUTHORITIES</u>

**Cases**  **Page(s)**

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459 (S.D.N.Y. 2013) ........................ 6

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012)........................................................................................................ 17

*Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2020) ................... 11

*In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147 (S.D.N.Y. 2013) ........................................ 6, 12

*In re Citigroup Inc. Sec. Litig., No. 09 MD 2070* (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ......................................................................................................................... 7, 9

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ....................................... 10, 11

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ........................................................ 12

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ............................................................................................................................... 15, 24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, (S.D.N.Y. Nov. 8, 2010) ...................................................................................... 17, 18

*Fleisher v. Phoenix Life Ins. Co., No. 11-CV-8405* (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........................................................................................................................ 20

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) ........................ 17

*In re Gilat Satellite Networks, Ltd., No. CV-02-1510*, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ........................................................................................................................... 19

*In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................. 20

*In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ..... 10-11, 15, 22

*Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .................... 19

*Hill v. Cty. of Montgomery*, 2021 WL 2227796 (N.D.N.Y. June 2, 2021) ................................ 11

*In re IMAX Sec. Litig.*, 283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................... 7, 17

*In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........................... 17

*Jander v. Ret. Plans Comm. of IBM,* 2021 WL 3115709 (S.D.N.Y. July 22, 2021) ................. 20

*Lea v. Tal Educ. Grp., No. 18-CV-5480* (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)  20

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................... 17

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009) ............................................... 16

*In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020)... 23

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) .................... 17

BRIEF IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

*Rupnow et. al. v. E\*TRADE Securities, LLC*, Case No. 1:19-cv-10942-DLC

*Padro v. Astrue*, 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) ................................ 15, 24-25, 25

*PaineWebber Ltd. Partnerships Litig.,* 171 F.R.D. 104, 133 (S.D.N.Y. 1997)........................... 17

*Puddu v. 6D Glob. Techs., Inc.,* 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ........................ 23

*Shapiro v. JPMorgan Chase & Co.,* 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................. 17

*In re Signet Jewelers Ltd. Sec. Litig.,* 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........... *passim*

*In re Sony SXRD Rear Projection TV Class Action Litig.,* 2008 WL 1956267 (S.D.N.Y. May 1, 2008)........................................................................................................................... 19-20

*In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96 (2d Cir. 2005) .............................. *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Fed. R. Civ. P. 12 ......................................................................................................... 2, 14, 19

# I. __INTRODUCTION__

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure (FRCP), Lead Plaintiffs Joshua Rupnow ("Rupnow") and Peter Szostak ("Szostak") (together "Lead Plaintiffs" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion for approval of: (1) the $1,400,000 Common Fund Settlement; (2) the proposed Plan of Allocation.[1]

Subject to the Court's approval, the Lead Plaintiffs have agreed to settle the claims in the Action in exchange for a common fund cash payment of $1.4 million. The Lead Plaintiffs respectfully submit that this proposed Settlement is a favorable result for the Class, and it satisfies the standards for final approval under FRCP Rule 23 in light of the form and amount of the Settlement, the substantial challenges that Lead Plaintiffs would face in proving liability and damages in continued litigation, and the significant costs and delays that would inevitably occur in the context of such litigation.

The Settlement is the product of extensive arm's-length negotiations between the parties.[2] These negotiations took place over a period of nearly a month to reach a settlement in principle,

---

[1] Lead Plaintiffs and Counsel also submit separate briefing contemporaneously herewith in support of an application for reasonable attorneys' fees and expenses, reimbursement for their reasonable lost time and expenses investe d in connection with the prosecution of this litigation, reimbursement of any out-of-pocket litigation-related expenses or lost time incurred by Lead Plaintiffs' and a very modest and reasonable service award for each of the Lead Plaintiffs themselves of not more than $4,000 ($8,000 aggregate).

[2] Certain of these background events were previously recounted for the Court in the Lead Plaintiffs' submissions in support of their motion for preliminary approval, and are found at ECF No. 79 at pp. 1-4 and ECF No. 80 at pp. 2-3. Lead Plaintiffs incorporate that information and those documents herein by reference and will cite to those materials as appropriate. Lead Plaintiffs also submit herewith the July 28, 2023 Supporting Declaration of Kent A. Bronson, in order to, among other things, describe events and circumstances which have occurred since the Lead Plaintiffs moved for preliminary approval, and/or since the Court granted preliminary approval.

BRIEF IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

*Rupnow et. al. v. E\*TRADE Securities, LLC*, Case No. 1:19-cv-10942-DLC

and over two months before the final terms of the stipulation of settlement were agreed upon and the final Settlement Agreement was executed by the parties and submitted to the Court for consideration and preliminary approval. The course of these negotiations included a full-day in-person mediation on January 13, 2023 in New York City under the oversight of highly experienced and respected mediator Peter H. Woodin, Esq., of JAMS, and weeks of intense follow-on negotiations that also took afterward, again through and with the guidance of Mediator Woodin, before a settlement-in-principle was reached in early February 2023, and then the final Settlement Agreement in March of 2023.

Nor was the Settlement in this litigation reached quickly or easily, but only after three years of litigation, and after the Lead Plaintiffs obtained a favorable ruling on ETRADE's Rule 12(b)(6) motion, disputes over bifurcation of class and merits discovery, a hotly contested Rule 12(c) motion for partial judgment on the pleadings over the scope of the claims and putative Class Period, extensive written discovery (including several sets of interrogatories and requests for documents), and multiple document productions on both sides ultimately totaling over 111,000 pages. Plaintiffs also consulted with a highly experienced and well-recognized industry expert in the securities lending and "hard-to-borrow" (HTB) short-sales field to obtain a broader and deeper understanding of this highly-specialized and esoteric business. Thus, Lead Plaintiffs and their Counsel conducted settlement negotiations and reached this Settlement with a well-developed understanding of the strengths and weaknesses of this complex class litigation. The result is a Settlement that is fair, reasonable and adequate, provides significant monetary benefits to eligible Settlement Class Members, and treats Settlement Class members reasonably, fairly and equitably in the context of one another.

BRIEF IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

*Rupnow et. al. v. E\*TRADE Securities, LLC*, Case No. 1:19-cv-10942-DLC

The Settlement is also a favorable result in light of the substantial risks of continued litigation. Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendant in the litigation are meritorious, they recognize that this Action presented a number of considerable risks had it continued through the litigation process. Absent this Settlement, there was a significant risk that the Court might have granted Defendant's anticipated (indeed, practically guaranteed) opposition to class certification and motion for summary judgment in part or in whole, and/or that a jury might have accepted Defendant's arguments at trial and put an end to the case at that point, despite the investment of significant additional dedication, time and expense of both the Lead Plaintiffs and their Counsel.

The Court granted preliminary approval of the Settlement on May 19, 2023 and June 27, 2023, respectively.[3] Pursuant to the Court's direction, then, the first phase of notice to the Class was thus issued on July 7, 2023, when the Settlement Administrator sent over 32,051 separate, individual email notices to the email accounts on a Class List provided by ETRADE and mailed via USPS to 3,532 persons where an email account was not provided or no longer in service, pursuant to the terms of the Settlement Agreement. In response to this first wave of notice, potential Settlement Class Members have generally reacted positively to the proposed Settlement and its terms. While pursuant to the Court's Preliminary Approval Order, potential members of

---

[3] On May 19, 2023, the Court ordered conditional certification of the Settlement Class, and appointment of Plaintiffs as class representatives and Plaintiffs' Counsel as Class Counsel, however the Court sought clarification on the Class Claim forms. Plaintiffs submitted revised forms, and then on June 27, 2023, the Court ordered that the revised claim forms submitted on June 26 are approved and ordered the settlement administrator to issue notice to the class members by July 7, 2023. ECF Nos. 87 (Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order")), and 93.

the Settlement Class still have an additional 24 days to either opt-out or object to the terms of the proposed Settlement, through roughly the first half of the period from the issuance of the notice to Court-ordered the objection/exclusion deadlines, Lead Plaintiffs, their Counsel and the Settlement Administrator are aware of no formal objections or requests for exclusion having been submitted, and are only aware of a single potential objector to the proposed Settlement.[4] Lead Plaintiffs (who also both continue to fully support the Settlement) and Lead Counsel submit that these circumstances further confirm the that the proposed Settlement is fair, reasonable and adequate and in the best interests of the Settlement Class, and should receive final approval from this Court. Furthermore, Plaintiffs' Lead Counsel having have concluded that the Settlement is fair, reasonable, and adequate and in the best interests of the Class based on their substantial experience prosecuting complex commercial and class action litigation.

Accordingly, for the reasons set forth above and elsewhere herein and in their supporting papers submitted herewith, Lead Plaintiffs and Lead Counsel respectfully request that the Court grant final approval of the Settlement under the terms of the executed Settlement Agreement, certify the Settlement Class, appoint Plaintiffs Szostak and Rupnow as Settlement Class Representatives, and appoint Lead Counsel as Counsel for the Settlement Class.

---

[4] This potential Class member expressed dissatisfaction with the claims-filing process and the level of detail she believed was required to submit a valid claim for Tier 1 relief. Lead Counsel have communicated with this person and informed her that that level of detail is not necessarily required under the language of the Settlement Claim Form and in order to submit a valid Tier 1 claim, and are continuing to work with her to address her concerns and assist her in filing her claim for Tier 1 relief, to the extent that she ultimately qualifies for this level of relief. As a result of these efforts, Lead Counsel have identified and are making improvements to the claims-filing process and the format of the online information submission portal, as well as certain language on that portal concerning the submission of information in support of Tier 1 claims.

## II. <u>BACKGROUND</u>

As mentioned above, the Court is already familiar with the factual background giving rise to the proposed Settlement reached in this case, by virtue of the Plaintiffs' filings in support of their motion for preliminary approval (*see* ECF Nos. 78-80), the factual background portions of which are incorporated herein by reference. *See supra* note 2.

To summarize, on April 22, 2023, the Lead Plaintiffs filed an Unopposed Motion for Preliminary Approval of the Proposed Class Settlement, Preliminary Certification of Settlement Class, and Approval of Class Notice (the "Preliminary Approval Motion"). ECF No. 78-80. A hearing was held on April 28, 2023, where the Court requested the parties revise the language in the long and short form notices to class members to provide additional explanation to the two tiers of recovery. ECF Nos. 83, 85. Addressing the issues raised at the hearing on the Motion for Preliminary Approval, Plaintiffs filed revised the notice forms on May 15, 2023. ECF No. 84 The revised notice forms were approved by the Court on May 19, 2023. ECF No. 87.

After the Court's granting of preliminary approval, pursuant to the terms of the Settlement Agreement, E*TRADE provided Plaintiff and the Court-appointed Claims Administrator Kurtzman Carlson Consultants LLC ("KCC") with a Class List of potential Class members consisting of approximately 36,000 separate listings. Following receipt of the Class List, Lead Counsel worked with KCC to develop a Proof of Claim form for provision of postcard communications with notice (initially via email) to all persons identified on the Class List. Pursuant it the terms of the Settlement Agreement, Plaintiffs then provided the Court with a proposed settlement claim form on June 16, 2023, ECF No. 89, In response to which the Court directed that (ECF Plaintiffs revised the proposed claim form. ECF Nos. 91-92. The claim form

was approved by the Court on June 27, 2023. The Court then directed, among other things, that KCC disseminate notice of the proposed settlement to prospective Class members on contained the Class List by June 7, 2023. ECF No. 91 The Court also upheld the same schedule that it in the May 19, 2023 Preliminary Approval Order, maintaining deadlines for requests for exclusions and objections (of August 21, 2023), and motions for final approval and counsel fee and expense applications, etc. ECF Nos. 87, 89. The Court also maintained the final approval hearing date of October 6, 2023. *Id*.

## III. THE APPROVED NOTICE PLAN WAS SUCCESSFUL IN REACHING CLASS MEMBERS AND SATISFIED RULE 23 AND DUE PROCESS REQUIREMENTS.

### A. The Approved Notice Plan was Successfully Administered

FRCP 23(e) provides that a class action settlement must be presented to the Court for approval, and approval should be granted . The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." *See also In re Citigroup Inc. Bond Litig*., 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig*., 293 F.R.D. 459, 464 (S.D.N.Y. 2013).

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation omitted). In ruling on final approval of a class settlement, the court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms. *See Visa*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig*., No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014); *In re IMAX Sec. Litig*., 283 F.R.D. 178, 188 (S.D.N.Y. 2012).

In the process of considering and ultimately granting preliminary approval of the proposed settlement, this Court engaged in a thorough review of the Parties' proposed notice plan. *See* ECF Nos. 83, 85, 87, 91, & 93. The Court reviewed the Parties' original plan and encouraged modification of it multiple times to ensure, among other things, that the language clearly detailed the differences in the two tiers of recovery and that the proposed email and mail notice forms provided sufficiently detailed information describing the settlement and informing potential Settlement Class lass members where they could readily find more detailed information and answers to frequently asked questions pertaining to the Settlement. *Id.* These changes resulted in a tailored approach aimed at ensuring that potential Class Members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FRCP 23(c)(2)(B).

Pursuant to that plan, notice of the Settlement has been provided to the 35,583 potential Class Members pursuant to the terms of the Settlement Agreement and consistent with the Court's subsequent Orders and the Plaintiffs' Motion. Specifically, on Wednesday July 7, 2023, KCC caused the email notice to be sent to 32,051 valid personal emails that were included on the Class List provided by E*TRADE. *See* Ex. A, KCC Decl. at ¶ 2. That same day, KCC's vendor reported sending 32,051 of those emails successfully, for a 90.1% success rate. *See* Ex. A, KCC Decl. at ¶3-5. A certain number of the potential Class member listings on the Class List contained emails that were returned as undeliverable or no longer in service; for those potential Class members, KCC sent notice of the settlement via U.S. mail. These notices were mailed on July 7, 2023 to the remaining 3,532 class members. *See* Ex. A, KCC Decl. at ¶ 3-5. In addition, KCC will also be sending a follow-up reminder notice to potential Class Members, consisting of consists of re-

issuing the email notice with an updated subject line stating "Reminder" and specifically addressed to potential Class Members who did not submit claim forms and whose initial email notice did not "bounce-back". *See* Ex. A, KCC Decl. at ¶ 7.

## B. To Date, Lead Plaintiffs Have Not Received Any Formal Opt-Outs or Objections

In addition to facilitating notice, KCC has also administered opt-outs from the proposed Settlement, which as of July 28, 2023, has not resulted in any formal requests for exclusion or objections. *See* Ex. A, KCC Decl. at ¶¶ 10-11. As far as Lead Plaintiffs and their Counsel are aware, there are no potential Settlement Class members have expressed dissatisfaction with the proposed Settlement or indicated that they may object or opt-out, with the exception of the one person referenced in note 4 above that expressed dissatisfaction with the claims-filing process and the level of detail believed to be required to submit a valid Tier 1 claim. As stated above, Lead Counsel have communicated with this person, and intend to continue to do so in order to address her concerns and assist her in filing a claim for Tier 1 relief to the extent that she ultimately meets the qualifications for such relief.[5]

Lead Counsel have also continued, and will continue, to monitor the email account and phone number provided to further assist potential Class members with additional questions or inquiries about the case and the proposed Settlement, and will provide an update to the Court with

---

[5] Also as mentioned above, as a result of these discussions, Lead Counsel have identified and are making improvements to the claims-filing process and the format of the online information submission portal, as well as certain language on that portal concerning the submission of information in support of Tier 1 claims. *See supra* note 4.

BRIEF IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

*Rupnow et. al. v. E\*TRADE Securities, LLC*, Case No. 1:19-cv-10942-DLC

total responses, requests for opt-outs and any known objectors following the August 21, 2023 deadline.  ECF. No. 87.

IV.     **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE GRANTED FINAL APPROVAL.**

    A.     **The Standards for Final Approval**

FRCP 23(e) provides that a class action settlement must be presented to the Court for final approval, and should be approved if the Court finds it "fair, reasonable, and adequate."  FRCP. 23(e)(2). In ruling on final approval of a class settlement, courts in the Second Circuit should examine both the negotiating process leading to settlement, and the settlement's substantive terms. *See WalMart Stores*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig*., No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014).

Public policy favors settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'").   This public policy is well-served by approval of the Settlement here, considering that, absent resolution, its continued litigation could and likely would consume years of additional time and hundreds of thousands of dollars, if not millions of, dollars worth of additional financial resources of the parties and of this Court, and potentially of the Second Circuit.

Because settlements represent an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while reviewing courts should not merely "rubber stamp" approve proposed settlements, they also should "stop short of the detailed and thorough investigation[s]" typically undertaken when actually trying the cases involved.  *City of Detroit v.*

BRIEF IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

*Rupnow et. al. v. E\*TRADE Securities, LLC*, Case No. 1:19-cv-10942-DLC

*Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The Court evaluates whether a settlement presented to it for final approval is "fair, reasonable, or adequate" by considering its terms in the light of the factors set forth in FRCP 23(e)(2). The first two prongs of that Rule — whether the proposed Class Representatives and Class Counsel have adequately represented the Class, and whether the proposed settlement was negotiated at arms'-length — address the Settlement's "procedural" fairness, while the second two progs — consideration of the relief provided to the Settlement Class, and whether the proposed settlement treats Class members equitably — are intended to address a proposed settlement's "substantive" fairness. 2018 Advisory Notes to FRCP 23(e)(2) ("2018 Advisory Committee Notes").

As the 2018 Advisory Committee Notes indicate, these four Rule 23 factors "were intended to supplement rather than displace" the factors historically used by the Second Circuit for settlement analysis, referred to as the *Grinnell* factors (for the *City of Detroit v. Grinnell Corp.* case cited above). *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019) (citing 2018 Advisory Committee Notes); *Hill v. Cty. of Montgomery*, 2021 WL 2227796, at *3 (N.D.N.Y. June 2, 2021) ("Courts in the Second Circuit continue, however, to consider and analyze the *Grinnell* factors as well."). The *Grinnell* factors consider:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of

reasonableness of the settlement fund in light of the best possible
recovery; [and] (9) the range of reasonableness of the settlement fund
to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (internal citations omitted). "[N]ot every factor must weigh in favor of

[the] settlement, rather the court should consider the totality of these factors in light of the

particular circumstances." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *9 (S.D.N.Y.

Oct. 16, 2020).

The proposed Settlement here easily satisfies the Rule 23(e)(2) factors and the *Grinnell*

factors.

### 1.    Factual Overview of the Settlement Terms

Under the terms of this proposed Settlement, E*TRADE will pay $1.4 million into a

common settlement fund out of which  payments to Settlement Class Members will be made (after

notice/administration costs, counsel fees and expenses, and service/incentive payments), under a

proposed allocation plan consisting of two different tiers of relief.  ECF No. 87. This Plan of

Allocation (and the Settlement itself) is a reasonable and fair method of compensating E*TRADE

customers who were or may have been charged HTB interest without being shown an indicative

interest rate prior to trade execution.  As explained previously in the context of Plaintiffs' request

for preliminary approval, the proposed tiered relief categories contemplated by the Settlement

reflect the material differences between E*TRADE's different trading platforms during the Class

Period, and a corresponding likelihood that specific customers trading on different platforms were

or were not shown indicative interest rates prior to short selling HTB securities.

Courts routinely grant final approval for settlements structured similarly to the proposed

Settlement here, with differentiated or "tiered" relief categories for potential Settlement Class

members facing different circumstances, levels of conduct severity, and warranting different measures of relief.

Courts typically apply a presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel after meaningful discovery," *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts usually give "great weight" to the recommendations of counsel regarding settlement, especially when negotiations are facilitated by an experienced, third-party mediator. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"). Here, the Settlement came about only after following exchanging detailed mediation reports and a full-day in-person mediation between the parties before Mediator Woodin at JAMS' New York City Offices, after which settlement negotiations continued for weeks, again channeled through Mediator Woodin.

## B. The Proposed Settlement is Procedurally Fair The Proposed Settlement is Procedurally Fair

### 1. Rule 23(e)(2)(A) – Plaintiffs Adequately Represented the Class

Courts typically adequacy of class representatives and class counsel both in deciding class certification and final settlement approval. FRCP 23(e)(2)(A). The adequacy requirement entails inquiries in to whether the Lead Plaintiffs' "interests are antagonistic to the interest of other members of the class" (*i.e.*, whether Lead Plaintiffs' claims are "typical of and coextensive with

those of other Class Members."), and whether Lead Counsel adequately represented the proposed Class. *Signet Jewelers*, 2020 WL 4196468, at *2. That requirement is easily met here.

Lead Plaintiffs have the same interests as Class members since all were injured by the same alleged breaches of the same agreements between E*TRADE and their customers by failing, on a systematic basis, to provide customers with indicative interest rates prior to executing short sale transactions of HTB securities, and charging rates/fees for those trades in excess of the rates/fees on E*TRADE's posted fee schedules during the Class Period. Moreover, Lead Plaintiffs devoted substantial time and effort to the prosecution of this case, including reviewing documents from Defendant, responding to Defendant's document requests, responding to Defendant's interrogatory requests, reviewing numerous filings in the case, receiving regular and detailed updates from counsel to keep apprised of significant developments in the case, preparing and sitting in on an approximately 11-hour mediation, and continued active efforts in the weeks following mediation, participating in and overseeing the settlement negotiations and the ultimate settlement-in-principle and the Settlement Agreement itself. Accordingly, Lead Plaintiffs have adequately represented the Settlement Class, a factor weighing in favor of settlement approval.

### 2. Rule 23(e)(2)(A) – Lead Counsel Has Adequately Represented the Settlement Class

In deciding final approval, the Court also weighs whether Lead Counsel has adequately represented the Class, including considering such factors as the extensiveness and vigor of the litigation and the settlement negotiations, and the results obtained. *See, e.g.*, 2018 Advisory Committee Notes; *see also Signet Jewelers*, 2020 WL 4196468, at *2. This factor is also easily satisfied here. At the time of settlement, Lead Counsel had vigorously litigated this Action for

over three years, Bronson Declaration ¶16, beginning with the filing of a highly detailed complaint, through an unsuccessful Rule 12(b)(6) motion to dismiss. Following the Court's decision on Defendant's motion, Lead Counsel immediately began extensive discovery efforts, successfully opposed Defendant's attempt to bifurcate discovery into class and merits phases, including discovery negotiations and a Rule 12(c) motion for partial judgment on the pleadings, written discovery (multiple interrogatories and RFPs), voluminous document production, in-person mediation and follow-up negotiations.

Lead Counsel ultimately reviewed and analyzed over 20,400 documents, consisting of over 111,300 pages, in addition to producing approximately 1,000 pages from the Lead Plaintiffs themselves. Lead Counsel also extensively consulted with a highly experienced and well-recognized expert in the "hard-to-borrow" (HTB) securities lending field to obtain a broader and deeper understanding of the highly-specialized and esoteric industry and enhance their understanding of the documents produced by E*TRADE and the issues at play in the litigation, including those revolving around short selling, HTB securities, and potential damages. Furthermore, Lead Counsel submitted a highly detailed mediation statement with numerous evidentiary citations based on the extensive factual record in the case, reviewed and analyzed Defendant's competing mediation submissions, and prepared detailed substantive rebuttal points and presentations for consideration by Mediator Woodin during the January 13, 2023 mediation session.

In sum, Lead Counsel's efforts through hundreds of hours spent zealously investigating, litigating, and advocating for the positive resolution of this case directly resulted in the outstanding cash Settlement for the substantial benefit of the Settlement Class. In light this, at the time the

Settlement was reached, there was no question that both Lead Plaintiffs and Lead Counsel had "obtained sufficient information to be able to intelligently assess the strengths and weaknesses of the case and appraise settlement proposals," *Padro v. Astrue*, 2013 WL 5719076, at *6 (E.D.N.Y. Oct. 18, 2013), or that they had a well-informed basis for believing that the Settlement is a highly favorable resolution of the litgation for the Class, and that this factor strongly supports final approval of the Settlement. *See, e.g.*, *Signet Jewelers*, 2020 WL 4196468, at *1 (over two years of litigation, including discovery and mediation, supported counsel's significant understanding of the case and weighed in favor of the decision to settle and the granting final approval of the proposed settlement). As such, the stage of proceedings and amount of discovery completed here support approval of the Settlement and reflect that Lead Counsel has adequately represented the Settlement Class in achieving this favorable result.

### 3. Rule 23(e)(2)(B) - The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of a Highly Experienced and Respected Mediator

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the independent, arm's length negotiation of a settlement being considered for final approval. *In re GSE Bonds*, 2019 WL 6842332, at *2. A settlement is entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116; *see also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x 37 (2d Cir. 2016). The Second Circuit has "recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116;

see also *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (internal quotation marks and citation omitted).  The case at hand fits well into that framework.

As stated above, Lead Plaintiffs and their Counsel in this litigation conducted a thorough investigation prior to filing the Complaint here; they then prepared the detailed Complaint and briefing in opposition to Defendant's successive motions to dismiss (under Rule 12(b)(6)) and for judgment on the pleadings (under Rule 12(c)); they obtained and reviewed and analyzed a very significant amount of fact discovery following the Court's December, 2021 decision denying ETRADE's Rule 12(b)(6) motion to dismiss, including over 111,000 pages of documents produced by ETRADE.  Accordingly, this case was subject to significant discovery prior to resolution, and this included even more pertinent information obtained through the extensive settlement discussions.  All of this rendered Lead Counsel well informed regarding the merits and potential damages of the legal issues and claims involved here.  Similarly, Lead Plaintiffs and Lead Counsel had a very well-informed basis for assessing the strength of the Class's claims and Defendant's defenses when they accepted Mr. Woodin's mediator's recommendation to settle the Action.

The Settlement is also not contingent on the award of counsel fees and costs or service payments, etc., which is further indicative of a fair and arm's-length settlement process.  *See* FRCP 23 Advisory Committee Note.  Moreover, the parties agreed on a percentage of the Settlement Fund to allocate to attorneys' fees only *after* they agreed on the material terms of the relief to the class, including the total Settlement amount.

In addition, the judgment of Lead Counsel, firms highly experienced in class action litigation, that the Settlement is fair, reasonable and in the best interests of the Settlement Class is entitled to "great weight."  *Shapiro v. JPMorgan Chase & Co*., 2014 WL 1224666, at *2 (S.D.N.Y.

Mar. 24, 2014); *accord In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474

(S.D.N.Y. 1998) (courts consistently give "'great weight' ... to the recommendations of counsel,

who are most closely acquainted with the facts of the underlying litigation") (citation omitted).

####    4.    Rule 23(e)(2)(C): The Relief For the Settlement Class is Substantial.

A plan for allocating settlement proceeds, like a settlement itself, should be approved if it

is deemed to be fair, reasonable and adequate. *See, e.g.*, *IMAX*, 283 F.R.D. at 192; *Bear Stearns*,

909 F. Supp. 2d at 270.  A plan of allocation is also deemed fair and reasonable as long as it has a

"rational basis." *E.g.*, *Flag Telecom*, 2010 WL 4537550, at *21; *In re Initial Pub. Offering Sec.*

*Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009).  Generally, a plan of allocation that reimburses

class members based on the relative strength and value of their claims is found to be reasonable.

*See IMAX*, 283 F.R.D. at 192.  A plan of allocation, however, need not be tailored to fit each and

every class member with "mathematical precision" to be deemed fair and reasonable and to be

approved.  *PaineWebber*, 171 F.R.D. at 133.  Furthermore, in determining whether a plan of

allocation is fair and reasonable, courts again give significant weight to the opinion of experienced

counsel.  *See, e.g., In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y.

2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion

of counsel") (citation omitted); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010)

(same).

Here, the proposed plan of allocation, developed by Lead Counsel, in consultatiuon with

Lead Plaintiffs, and also after discussions with E*TRADE's Counsel, provides a fair and

reasonable method to allocate the Net Settlement Fund among Class members who submit timely,

valid Claim Forms. The Plan of Allocation, the details of which are set forth at pages 5-6 of the long form Settlement Notice that was issued to potential Class Members. *See* ECF No. 80-3 at pp. 5-6. The dual "tiered relief" categories outlined in the Plan of Allocation reflects the significant variations between E*TRADE's different trading platforms, and the corresponding likelihood that E*TRADE's HTB short-trade customers were, or were not, provided with indicative interest rates by E*TRADE prior to short selling HTB securities.

Since the ultimate recovery by the Class Members will not be determined until all of the timely and valid claim forms sent by potential Class members are received by the claims administrator, Lead Counsel will supplement this motion on or before the August 21, 2023 deadline for claims submission with additional data detailing and tallying the precise amounts of relief expected to be provided to Settlement Class Members.

### C.  Rule 23(e)(2)(C): The Relief For the Settlement Class is Substantial

Rule 23(e)(2)(C) next considers whether the Settlement is adequate, considering the costs, risks, and delay of trial and appeal. This prong encompasses seven of the Grinnell factors: the complexity, expense, and likely duration of the litigation (factor 1); the risks of establishing liability (factor 4); the risks of establishing damages (factor 5); the risks of maintaining the class action through trial (factor 6); the ability of the defendants to withstand a greater judgment (factor 7); and the range of reasonableness of the settlement in light of the best possible recovery (factor 8) and the attendant risks of litigation (factor 9).

In evaluating  complex class action settlements, federal courts, including this one, 'have long recognized that such litigation is notably difficult and notoriously uncertain.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *15

BRIEF IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

*Rupnow et. al. v. E*TRADE Securities, LLC*, Case No. 1:19-cv-10942-DLC

(S.D.N.Y. Nov. 8, 2010) (citation omitted). Indeed, courts recognize that class actions claims involving securities are "are generally complex and expensive to prosecute." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007).

This case was no exception. While Plaintiffs believe they have meritorious claims, they are also cognizant that the Classes face significant procedural, liability, and damages risks should their case move forward. Already in this matter, E*TRADE's Rule 12 (c) motion succeeded in reducing the class period by about 2.5 years (from the original 6 years to the approximately 3.5 year period from May 26, 2016 through October 15, 2019). *See* ECF No. 66. Further, the expense incurred by Plaintiffs and the purported class would undoubtedly increase drastically if Settlement is not approved and the case progresses through the full adversarial litigation process to trial, judgment, and inevitable appeals. While significant discovery (both formal and informal) has already taken place, more will be necessary and the case will necessarily enter into class certification and summary judgment briefing if the case continues to be litigated Thus, if the Settlement were not reached, and is not approved, both parties will undoubtedly incur substantial additional costs in terms of further discovery (including taking and defending multiple depositions), class certification motion practice, defending or bringing summary judgment motions, and preparing for and participating in trial (and related motions in limine and other pretrial motions), not to mention subsequent appeals.

Moreover, proceeding through trial and appeals in contested litigation of this case would not only require significant party and judicial resources, it would have posed significant risks to recovery, and added at least several years of delay before Settlement Class members could receive and enjoy the benefit of a verdict, if any, returned in its favor. *Guevoura Fund Ltd. v. Sillerman*,

2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019) (the "substantial time and expense that would be involved in continuing to prosecute the Action through trial and the inevitable post-trial motions and appellate proceedings . . . would have added significantly to the time and expense of this Action and, even if Lead Plaintiff[s] [were] ultimately successful, delayed by years any recovery to the Class"); *In re Sony SXRD Rear Projection TV Class Action Litig.*, 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("Not only would Plaintiffs spend substantial sums in litigating this case through trial and appeals, it could be years before class members saw any recovery, if at all").

### D. Rule 23(e)(2)(C)(ii): The Effectiveness of the Proposed Method of Distributing Relief is Adequate, Reasonable and Fair

"Rule 23(e)(2)(C)(ii) requires courts to examine the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019). The claims process "should deter or defeat unjustified claims" without being "unduly demanding." *Id* (quoting 2018 Advisory Committee Notes). A "plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *Jander v. Ret. Plans Comm. of IBM*, 2021 WL 3115709, at *6 (S.D.N.Y. July 22, 2021). "Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable." *Signet Jewelers*, 2020 WL 4196468, at *13. As mentioned above, in determining the fairness, reasonableness, and adequacy of a proposed allocation plan, courts give considerable weight to the opinion of experienced counsel. *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) ("[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel"); *Fleisher v. Phoenix Life Ins. Co.*,

No. 11-CV-8405 (CM), 2015 WL 10847814, at *12 (S.D.N.Y. Sept. 9, 2015) ("Counsel's conclusion that the distribution plan is fair, adequate, and reasonable . . . is entitled to great weight.").

If approved, the Plan of Allocation will govern how the Net Settlement Fund will be distributed among Class Members who have submitted timely and valid Proof of Claim Forms to the Claims Administrator (in accordance with the requirements established by the Court) that are approved for payment. In calculating the estimated recovery, the pool of class members affected by this litigation have all received notice of the proposed Settlement, either by email or hard copy via regular mail. Their potential recovery is determined by their response to the notice: Tier 1-level claimants will receive a proportional amount of the Net Settlement Fund in relation to the amount of excessive HTB fees they were charged, as determined by the information they provide, while Tier 2-level claimants will receive an equal amount in the form of a "flat-fee" payment relative to one another. This dual "two-tiered" relief scheme is designed to, and does, reflect the differences between E*TRADE's multiple different trading platforms, and the corresponding likelihood that customers were or were not shown indicative interest rates prior to short selling HTB securities, depending on which specific platform the trade was made, as revealed by information provided by E*TRADE in the context of discovery in this case.

Furthermore, this is an "opt-out" Settlement Class, meaning potential Class members who do not wish to participate in the Settlement or receive any recovery or release any claims pursuant to it, may decide not to do so by timely submitting a valid request for exclusion ("opt-out") of the Settlement, and individually litigate any claims against E*TRADE that they believe they might

have that would have otherwise been covered by the Settlement Agreement.   This choice, which is fully available to potential Class members who choose to exclude themselves and properly and timely follow the procedures established to do so, further supports final approval of the proposed Settlement as reasonable, fair and adequate.

### E. Rule 23(e)(2)(C)(iii): The Terms and Timing of the Proposed Award of Attorneys' Fees and Costs are Fair and Reasonable.

Plaintiffs' Counsel seeks a fee of 33 and 1/3% (representing a significant negative lodestar multiplier of about .37x) and expense reimbursement of $78,532.[6]  As explained further in Lead Counsel's contemporaneously-filed motion for attorneys' fees and expenses, the expenses incurred were reasonable and necessarily incurred, and the requested counsel fees are within the range of fees granted in comparable class settlements and weigh in favor of final approval.  Additionally, as explained in Lead Counsel's concurrently-filed fee and expense motion, the timing of the requested attorneys' fee payment also supports final approval.  Lead Counsel respectfully submits that awarding the full request for counsel fees and expenses upon final approval of the Settlement is appropriate due to the very favorable result achieved for the Settlement Class.

Ultimately, as provided for in the Settlement Agreement, the validity of the underlying proposed Settlement is to be unaffected by any action taken by this Court (or any appellate court) in relation to Lead Counsels' request for fees and costs.   The terms and timing of the proposed fees award is therefore fair and reasonable because the effectiveness of the proposed Settlement

---

[6] This time is current as of July 1, 2023. Plaintiffs will continue to work with the Claims Administrator and Class Members as necessary to see through the remaining 24 days of the claim window in addition to responding to any objectors and filing reply briefing upon the completion of the established claims period.  Plaintiffs anticipate this may require at least an additional 30-50 hours, which will not be included in its request for attorneys' fees.

and the releases contemplated thereby are not contingent on Court's approval of the fee/xpense request, and .the amount of any counsel  fees or costs sought but not awarded shall become part of the net settlement amount to be distributed to Settlement Class members pursuant to the Settlement.

**F.      Rule 23(e)(2)(C)(iv) – The Supplemental Agreement has No Bearing on Final Approval.**

"Rule 23(e)(2)(C)(iv) requires courts to consider 'any agreement required to be identified by Rule 23(e)(3),' that is, 'any agreement made in connection with the proposal.'" *In re GSE Bonds*, 2019 WL 6842332, at *3 (quoting FRCP  23(e)(2)(C)(iv) and 23(e)(3)). Pursuant to Rule 23(e)(3), it was previously disclosed that the parties entered into a confidential "Supplemental Agreement" providing Defendant with the qualified right to withdraw or terminate the Settlement upon the occurrence of certain conditions.   *See, e.g.*, ECF No. 79 at p. 22.  This qualified right arises if potential Settlement Class Members who meet certain criteria timely and validly exclude themselves from ("opt out" of) the Class.  *Id*. The confidentiality of this Supplemental Agreement was intended to protect the integrity of the proposed Settlement, and does not weigh against final approval. *Id*.

**G.      Rule 23(e)(2)(D): The Settlement Treats Tier 1 and Tier 2 Settlement Class Members Equitably Relative to Each Other.**

The proposed Settlement does not grant preferential treatment to the Lead Plaintiffs, who will share in the net Settlement Payment on the same terms as all other Settlement Class Members under the contemplated plan of allocation.  Furthermore, although the Representative Plaintiffs have applied for the enhancement payments and reimbursement of the their reasonable expenses

and/or time incurred in connection with assisting in the prosecution of the case, the Settlement is not contingent in any way on the Court's approval of those requests.

As detailed above, the proposed plan of allocation allows Settlement Class members to opt into a recovery that alternatively either provides an equal "flat" recovery (for valid and timely "Tier 2" claims), or allocates funds among potential Settlement Class members on a pro rata basis by their approximate losses, an approach "which courts uniformly approve as equitable." *In re Namenda*, 462 F. Supp. 3d at 316. The proposed Settlement therefore meets the requirements of Rule 23(e)(2)(D).

**H.** **The Notice Campaign Has Satisfied the Requirements of Rule 23 and Due Process**

The Notice provided to the Settlement Class has satisfied (and will satisfy, to the extent that it continues to be implemented) the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FRCP 23(c)(2)(B). The Settlement Notice also satisfied Rule 23(e)(1), which requires that notice of a proposed settlement be "reasonable." FRCP 23(e)(1)(B). Notice of a proposed settlement is reasonable if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Puddu*, 2021 WL 1910656, at *3. The notice here definitely does so.

Both the substance of the Settlement Notice and the method of its dissemination satisfied the required standards here. The Settlement Notice includes all of the information required by Rule 23(c)(2)(B), and in fact was developed with guidance from the Court to ensure that the notice

appropriately detailed the proposed Settlement, the dual "tiers" of recovery available to potential Settlement Class members, and the format of distribution. *See* ECF Nos. 83-87, 89, 91-93. In accordance with the Court's Preliminary Approval Order, and subsequent Orders issued by the Court to revise the claim forms, the Settlement Administrator has disseminated 35,583 copies of the Settlement Notice to potential Settlement Class Members as of July 7, 2023. KCC Decl. ¶¶ 3-6. KCC's vendor reported successful transmission of 32,051 of those emails, for a 90.1% success rate. *See id*. The potential Settlement Class members whose emails were returned as undeliverable or no longer in service received notice of the proposed Settlement via U.S. mail, which were mailed on July 7, 2023 to those 3,532 class members. *See id*. Copies of the Settlement Notice and Proof of Claim Form and other important documents from the docket were made available on a dedicated website maintained by the Settlement Administrator, and included in all notices disbursed to potential Settlement Class Members. *See id*.

This combination of email notice to those with active email accounts, and individual U.S.P.S. mail to potential Settlement Class Members whose emails were not valid or longer active, is "the best notice that is practicable under the circumstances" and satisfies the requirements of due process and Rule 23. FRCP 23(c)(2)(B). *See also, e.g.*, *Padro*, 2013 WL 5719076, at *3 ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."

## I. The Reaction of the Class to Date Favors Final Approval of the Proposed Settlement

The reaction of the Class to the proposed Settlement is perhaps the most significant factor to be weighed in considering its adequacy. *See, e.g.*, *Signet Jewelers*, 2020 WL 4196468, at *6; Padro, 2013 WL 5719076, at *5 ("The fact that a small number of objections were received weighs in favor of settlement," as does "the positive reaction of the class, particularly in light of its size."). Significantly, to date, no objections to the Settlement itself or the plan of allocation have been received, which is particularly significant given that the size of the Class.[7]

## V. CONCLUSION

For the foregoing reasons, Final Approval of the proposed Settlement should be granted, and the Court should the proposed Final Approval Order submitted herewith, and grant any other and further relief that it deems just and equitable.

DATED: July 28, 2023                                        Respectfully submitted,


                                                                      */s/ Kent A. Bronson*

                                                                      **BRONSON LEGAL LLC**
                                                                      Kent A. Bronson
                                                                      161 Madison Square West, 11th Fl.
                                                                      New York, NY 10010
                                                                      Telephone: (609)276-0406

---

[7] On May 19, 2023, in connection with the Court's conditional certification of the Class in this Action, the Court approved the form and substance of the Class Notice as satisfying due process. ECF No. 87. That Order allowed Class members to request to exclude themselves from the Class. Since Settlement Notice was mailed and published on July 7, 2023, no Class members have requested to be excluded from the Class. The deadline for requesting exclusion from the Settlement Class and for filing objections to the Settlement is August 21, 2023. As provided in the Preliminary Approval Order, Lead Plaintiffs will file reply papers no later than September 21, 2023, addressing timely and valid objections and requests for exclusion (if any) that are be received after this brief is filed.

Facsimile: (609)228-4997
bronsonlegalny@gmail.com

Mitchell Breit
mbreit@milberg.com
Tyler Litke
tlitke@milberg.com
100 Garden City Plaza
Garden City, New York 11530
Telephone 866.252.0878
Facsimile: (212) 868-1229

*Lead Counsel for Plaintiffs and the Settlement
Class*

**SILVER LAW GROUP**
Scott Silver
ssilver@silverlaw.com
11780 West Sample Road
Coral Springs, Florida 33065
Telephone: (954) 755-4799
Facsimile: (954) 755-4684

*Additional Counsel for Lead Plaintiffs*

BRIEF IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

*Rupnow et. al. v. E\*TRADE Securities, LLC*, Case No. 1:19-cv-10942-DLC

## CERTIFICATE OF SERVICE

I, Kent A. Bronson, hereby certify that on July 29, 2023, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:

**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
Marc L. Greenwald
Leigha Empson
Samuel Donohue (admitted *phv*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
marcgreenwald@quinnemanuel.com
leighaempson@quinnemanuel.com
samueldonohue@quinnemanuel.com

*Attorneys for E\*TRADE*